UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA BARICEVIC | No. 2:15-cv-1541-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from December 15, 2000, through the date of the final administrative decision.  (ECF No. 16.)  The Commissioner filed a cross-motion for summary judgment, and plaintiff filed a reply.  (ECF Nos. 21, 24.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 10, 20.)  While plaintiff initially filed a blank consent form with the court (ECF No. 12), counsel for plaintiff requested the court to disregard that filing and subsequently filed a document providing plaintiff's consent to proceed before a United States Magistrate Judge for all purposes (ECF No. 20).

1    For the reasons discussed below, the court DENIES plaintiff's motion for summary
2 judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters
3 judgment for the Commissioner.

4 I.   BACKGROUND

5    Plaintiff was born on May 25, 1968, completed some college, and is able to communicate
6 in English. (Administrative Transcript ("AT") 34, 54, 225.)[2] She has worked as a car salesperson
7 and bus driver. (AT 34, 56, 84.) Plaintiff applied for DIB and SSI on May 12, 2012, alleging that
8 her disability began on December 15, 2000. (AT 225-35.) Plaintiff alleged that she was disabled
9 primarily due to shoulder, knee, neck, and back injuries, and diabetes. (AT 247.) After plaintiff's
10 applications were denied initially and on reconsideration, plaintiff requested a hearing before an
11 administrative law judge ("ALJ"), which took place on July 24, 2013 and at which plaintiff,
12 represented by an attorney, and a vocational expert ("VE") testified. (AT 47-92.) The ALJ
13 issued a decision dated December 2, 2013, determining that plaintiff had not been under a
14 disability, as defined in the Act, between December 15, 2000 and the date of that decision. (AT
15 21-35.) The ALJ's decision became the final decision of the Commissioner when the Appeals
16 Council denied plaintiff's request for review on May 19, 2015. (AT 1-6.) Plaintiff then filed this
17 action in federal district court on July 17, 2015, to obtain judicial review of the Commissioner's
18 final decision. (ECF No. 1.)

19 II.   ISSUES PRESENTED

20    On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously
21 discounted plaintiff's own testimony regarding the extent of her symptoms and functional
22 limitations; and (2) whether the ALJ improperly rejected the opinion of plaintiff's treating
23 physician Dr. Siy.

24 ////

25 ////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

    A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

1   remained insured for purposes of DIB through September 30, 2002.  (AT 23.)  At the first step,

2   the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December

3   15, 2000, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following

4   severe impairments: "impingement syndrome of the left shoulder, calcium deposits in the left

5   shoulder rotator cuff, history of left cubital tunnel syndrome, cervical disk bulge, fibromyalgia (or

6   myofascial pain syndrome), diabetes mellitus, and obesity."  (AT 24.)  However, at step three, the

7   ALJ determined that plaintiff did not have an impairment or combination of impairments that met

8   or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

9   Appendix 1.  (AT 25.)

10      Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

11  ("RFC") as follows:  "[a]fter careful consideration of the entire record, the undersigned finds that

12  the claimant has the residual functional capacity to perform the full range of sedentary work as

13  defined in 20 CFR 404.1567(a) and 416.967(a)."  (Id.)

14      At step four, the ALJ found, based on the VE's testimony, that plaintiff was not capable of

15  performing any past relevant work.  (AT 34.)  At step five, the ALJ determined that, in light of

16  plaintiff's age, education, work experience, and residual functional capacity, there were jobs that

17  existed in significant numbers in the national economy that plaintiff could perform.  (AT 34-35.)

18  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from

19  December 15, 2000, through the date of the ALJ's decision.  (AT 35.)

20  ////

21  ////

---

claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ Erred in Finding Plaintiff's Testimony Regarding the Extent of the Symptoms and Limiting Effects of Her Impairments Less than Fully Credible*

First, plaintiff contends that the ALJ improperly rejected plaintiff's own testimony regarding the extent of the symptoms and limiting effects of her impairments.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between his testimony and his conduct, [claimant's] daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

5

1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id. at 959.

Here, the ALJ found plaintiff's pain and symptom testimony only "partially credible" based on the following rationale:

> The claimant's complaints of pain and limitations are partially credible because they are consistent with her diagnosed impairments, and the effects of obesity on her other disorders. Thus, to accommodate the claimants complaints of pain and fatigue, the undersigned finds that she is limited to sedentary work, which involves lifting no more than 10 pounds, and standing and walking only occasionally.  However, the claimant's allegations of more restrictive limitations are not credible for the following reasons.
>
> The claimant has alleged having severe pain, fatigue, and limitations in using her hands for manipulative tasks.  However, to the degree that these issues would preclude her from performing sedentary work, such allegations are not credible.  The record shows that the claimant had some initial problems with a shoulder disorder and left cubital tunnel syndrome.  However, she has had minimal treatment for these conditions during the periods at issue. She has been on some pain medication, but she has also gone for long periods without taking prescribed pain medication.  Moreover, when the claimant was receiving treatment, it was effective.  She received an injection into her shoulder on one occasion, which resulted in almost immediate improvement in range of motion and almost total resolution of her pain.  She has also indicated in the past that physical therapy helped reduce her pain and increase her functioning.  The record does not document any limitations in the claimant's use of her fingers for manipulative tasks.  Also, during the period at issue, clinical findings involving the upper extremities have shown only mild limitations regarding range of motion at extreme ranges.  The claimant has maintained full strength, sensation, and reflexes of the upper extremities.
>
> In addition, the claimant's activities of daily living include caring for her child, doing many light household chores, doing simple cooking, driving, watching television, and shopping.  These tasks are essentially normal and show an ability to perform sedentary and even some light tasks on a regular and consistent basis.  However, due to the complications of obesity and chronic pain, the undersigned finds that it may be difficult for the claimant to consistently stand and walk for prolonged periods.  Moreover, lifting more than 10 pounds on a regular basis may aggravate the claimant's shoulder problem.  Thus, it is reasonable to limit the

6

|   |   |
|---|---|
| 1 | claimant to no more than sedentary work.  Nonetheless, more restrictive limitations are not warranted. |
| 2 |   |

(AT 32.)  In short, the ALJ found plaintiff's testimony only partially credible because it conflicted with the fact that plaintiff responded favorably to conservative treatment and that such treatment was sporadic, and that her alleged limitations were undermined by plaintiff's daily living activities.  As discussed below, these were clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence in the record.

First, the ALJ discounted plaintiff's testimony because the record shows that plaintiff received only conservative treatment and that plaintiff's medical condition improved with that treatment.  Plaintiff's relatively conservative treatment was a proper consideration.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  It was also proper for the ALJ to consider plaintiff's positive reaction to the treatment she received.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

More importantly, the record provides substantial evidence in support of the ALJ's reasoning regarding the conservative nature and effectiveness of the treatment plaintiff received.  As the ALJ noted, plaintiff's treatment consisted largely of prescribed medicines, which generally helped with her symptoms when she was using them, and physical therapy, which improved her condition when she followed recommendations.  (E.g., AT 354, 389, 591, 611, 615, 651.)  For

instance, the record shows that when plaintiff received an injection of Marcaine for her left shoulder, "she regained full motion of the left shoulder joint and . . . noted approximately 90+ % pain relief of the left shoulder." (AT 354-55.) While there is some evidence in the record showing that the treatment plaintiff received was at times less effective than at other times, and that some medications had undesirable side effects (E.g., AT 358, 651), the ALJ carefully considered all of the medical evidence in the record and reasonably resolved the conflict therein based on substantial evidence. See Edlund, 253 F.3d at 1156.

Furthermore, there is substantial evidence in the record to support the ALJ's determination that the existence of gaps in plaintiff's treatment undermined her claims of disabling symptoms. "[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted). Here, plaintiff's treatment records from Kaiser Permanente developed during the relevant period show that there existed multiple large gaps in time between her visits, two of which lasted well over one year in length, that suggest that plaintiff's impairments were not as severe as she alleged. (See, e.g., AT 422-24, 453-59, 474-77, 480-83.) Furthermore, as the ALJ noted, the record indicates that plaintiff went long stretches of time without using her medications as prescribed. (AT 32.) Accordingly, there existed substantial evidence to support the ALJ's reasoning.

Plaintiff argues that the ALJ was not permitted to rely on the gaps in plaintiff's treatment to support his adverse credibility determination without first seeking an explanation from plaintiff for why those treatment gaps existed, something the ALJ did not do. In support of this argument, plaintiff cites to the Ninth Circuit Court of Appeals' ruling in Orn v. Astrue, 495 F.3d 638 (9th Cir. 2007). However, that opinion did not create an affirmative duty requiring the ALJ to specifically request that the claimant provide an explanation for any gaps in treatment before relying on those gaps in support of an adverse credibility determination. That decision only

8

1  requires the ALJ to consider any explanation the claimant may provide, or other information in
2  the record indicating that the gap in treatment was due to some reason other than a lack of
3  debilitating symptoms, before the ALJ may infer that such a gap undermined the claimant's
4  credibility.  Orn, 495 at 638.  Indeed, the Ninth Circuit Court of Appeals stated in that same case
5  "that an '*unexplained* . . . failure to seek treatment' may be the basis for an adverse credibility
6  finding."  Id. (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)) (emphasis added).
7  Here, the record indicates that plaintiff gave no explanation for any of the gaps in her treatment,
8  and nothing in the record suggests that the gap was attributable to plaintiff's inability to pay for
9  treatment or any other reason that would justify her in not seeking treatment during that time.
10 Accordingly, the ALJ was permitted to rely on plaintiff's treatment gaps in support of his adverse
11 credibility determination.

12         In addition, the ALJ discounted plaintiff's pain and symptom testimony because it
13 conflicted with her reports of her daily activities.  "While a claimant need not vegetate in a dark
14 room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the
15 claimant reports participation in everyday activities indicating capacities that are transferable to a
16 work setting . . . Even where those activities suggest some difficulty functioning, they may be
17 grounds for discrediting the claimant's testimony to the extent that they contradict claims of a
18 totally debilitating impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks
19 omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered
20 claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and
21 boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan
22 v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding
23 claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his
24 friend's child" was a specific finding sufficient to discredit the claimant's credibility).

25         Here, plaintiff represented that her daily activities consisted of cooking for herself and her
26 adolescent child, sweeping and mopping, vacuuming, doing laundry, driving, grocery shopping,
27 and watching television.  (AT 64-66, 69.)  Plaintiff argues that substantial evidence did not
28 support the ALJ's reasoning regarding plaintiff's daily activities because plaintiff's testimony

further clarified how her impairments negatively impacted her ability to carry out those activities to a degree that corroborates plaintiff's debilitating pain and symptom claims.  To be sure, the record also contains some contrary evidence, such as plaintiff's testimony that she cooked only simple meals and occasionally received assistance from others when performing certain household chores, suggesting that plaintiff's activities are more limited than what they might indicate on their face.  (AT 66.)  However, it is the function of the ALJ to resolve any such ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  The ALJ here reasonably assessed the evidence in the record regarding plaintiff's daily activities and plaintiff's testimony regarding how her impairments impacted her ability to carry out those activities and determined that while those reported activities supported the ALJ's RFC determination that plaintiff could perform only sedentary work, it did not show that plaintiff was completely disabled within the meaning of the Act.  (See AT 26, 32.)  Accordingly, the ALJ did not err in citing to plaintiff's daily activities in support of his adverse credibility determination.

In sum, the ALJ provided multiple clear and convincing reasons for his adverse credibility determination that were based on substantial evidence from the record.  Accordingly, he did not err in considering and weighing plaintiff's testimony.

　　　　2. *Whether the ALJ Properly Discounted the Opinion of Plaintiff's Treating Physician Dr. Siy.*

Second, plaintiff contends that the ALJ failed to assign the proper weight to the treating opinion of Dr. Siy.  Specifically, she argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence from the record to support his assignment of "no weight" to Dr. Siy's opinion regarding the functional limitations caused by plaintiff's impairments.

////

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, Dr. Siy took over as plaintiff's primary treating physician at Kaiser Permanente beginning on October 2, 2012. (AT 595.) On October 20, 2012, after his second encounter with plaintiff, Dr. Siy completed a "Fibromyalgia Medical Source Statement" for plaintiff. (AT 569-

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

71.) Therein, Dr. Siy noted that he had been acting as plaintiff's treating physician for 2 months as of that time. (AT 569.) He diagnosed plaintiff with fibromyalgia, noting that plaintiff exhibited the following symptoms stemming from that disease: 10 tender points, hypersensitivity to touch, fatigue, chronic widespread pain, joint stiffness, morning stiffness, irritable bowel syndrome, and myofascial pain syndrome. (Id.) Dr. Siy also noted that plaintiff exhibited "constant, sharp, sensitive" pain in her lumbosacral and cervical spine, and had similar bilateral pain in her shoulders, arms, hands/fingers, hips, and knees/ankles/feet. (AT 570.) Based on these findings Dr. Siy opined that plaintiff could walk up to 3 city blocks without rest or severe pain, sit for up to 30 minutes at a time, and stand for up to 5 minutes at a time. (Id.) Dr. Siy opined further that plaintiff could sit and stand/walk for less than 2 hours total over the course of an 8-hour workday, and would need a job that permits her to shift positions at will from sitting, standing, or walking. (Id.) He also opined that plaintiff was limited to using her hands to grasp, turn, and twist objects up to only 10 percent of a workday, engage in fine manipulations with her fingers up to only 20 percent of a workday, reach in front of her body up to only 30 percent of a workday, and could not engage in any overhead reaching. (AT 571.) Finally, Dr. Siy opined that plaintiff's impairments would cause her to be off task 25 percent or more of a typical workday, rendered her capable of only low stress work, and would cause her to be absent more than 4 days per month. (Id.)

The ALJ assigned "no weight" to the opinion of Dr. Siy for the following reasons:

> The medical source statement provided by Dr. Siy is rejected because the limitations he assessed are extreme and not supported by his own objective findings, or other objective evidence in the record. Moreover, his opinion is greatly inconsistent with all of the other medical opinions of record. At the time that he provided this assessment, Dr. Siy had only seen the claimant twice, with the most recent examination being specifically to obtain a statement of disability. A close reading of Dr. Siy's assessment shows that he relied almost exclusively on the claimant's subjective complaints and her allegations regarding diagnoses that she had received in the past, even though these diagnoses were not contained in Kaiser records. The assessment by Dr. Siy is inconsistent with the objective findings, the claimant's level of treatment, the successful use of medication or other treatments in the past, her activities of

>daily living, and the record as a whole. Thus, this opinion is given no weight.

(AT 33.) As discussed below, this rationale consisted of multiple specific and legitimate reasons for totally discounting Dr. Siy's opinion that were based on substantial evidence from the record.

First, the ALJ discounted Dr. Siy's opinion because it conflicted with both the objective medical findings in his own treating records, and the other medical evidence in the record. As the ALJ noted, the medical findings in Dr. Siy's own treating records were largely unremarkable. (AT 596, 605.) Furthermore, the other medical evidence in the record generally conflicted with the severe limitations Dr. Siy's opinion ascribed to plaintiff. Many of plaintiff's medical records from throughout the relevant period described plaintiff's impairments as "mild" or "moderate," and results from CT scans and physical examination were either unremarkable or revealed only impairments that were "minimal" in nature. (E.g., AT 446, 469, 504, 545, 552-56, 583, 588, 596, 653-56.)

The ALJ also correctly noted that Dr. Siy's opinion conflicted with the other opinion evidence in the record. See Andrews, 53 F.3d at 1041. In particular, examining physician Dr. O'Brien conducted a complete internal medicine evaluation of plaintiff on September 8, 2013, and issued an opinion based on his own independent clinical findings. (AT 650-58.) While Dr. O'Brien diagnosed plaintiff with fibromyalgia based on his own independent testing, he also determined that plaintiff's impairments rendered her far less functionally limited than what Dr. Siy opined. (AT 657-58.) The ALJ properly resolved the conflict between the two physicians' opinions by assigning "some weight" to Dr. O'Brien's opinion and rejecting Dr. Siy's opinion. (AT 32.) It was the ALJ's prerogative to make such a determination, and the ALJ's conclusion that Dr. Siy's opinion was undermined by Dr. O'Brien's opinion, by itself, constituted substantial evidence in support of the ALJ's specific and legitimate reasoning. See Andrews, 53 F.3d at 1041.

Finally, the ALJ also properly determined that the extreme limitations opined by Dr. Siy were undermined by plaintiff's minimal level of treatment, the fact that the treatment and medication plaintiff received prior to the time Dr. Siy issued his opinion was generally effective,

1    and plaintiff's largely normal activities of daily living. The ALJ determined that because the
2    limitations Dr. Siy opined largely reflected plaintiff's own subjective complaints, these reasons
3    undermined Dr. Siy's opinion for the same reason they undermined plaintiff's pain and symptom
4    testimony. (AT 33.) As discussed above with regard to the ALJ's consideration of plaintiff's
5    pain and symptom testimony, these reasons for discounting such extreme claims of disabling pain
6    and symptoms were proper and supported by substantial evidence.

7        Plaintiff contends that it was error for the ALJ to discount Dr. Siy's opinion on the basis
8    that it largely reflected plaintiff's subjective complaints because Dr. Siy primarily diagnosed
9    plaintiff with fibromyalgia, a disease that is diagnosed almost entirely on the basis of a patient's
10   reports of pain and other symptoms. While plaintiff is correct that an ALJ cannot require
11   objective evidence of fibromyalgia symptoms, and, therefore, cannot discount a physician's
12   opinion for a lack of such evidence, Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004), the
13   ALJ here did not rely on such reasoning to discount Dr. Siy's opinion. As discussed above, the
14   ALJ properly discounted plaintiff's pain and symptom testimony as being too extreme in light of
15   the other evidence in the record. With regard to Dr. Siy, the ALJ discounted his opinion because
16   the limitations he opined were drawn too heavily from plaintiff's subjective complaints of
17   debilitating pain, and not simply because he based his diagnosis of fibromyalgia and his
18   determination of the symptoms stemming from that condition on plaintiff's subjective claims.
19   Indeed, the ALJ found plaintiff's fibromyalgia to be a severe impairment at step two and took the
20   symptoms attributable to that impairment into consideration when determining plaintiff's RFC
21   limitations, finding that they rendered plaintiff capable of only sedentary work. (AT 24-33.) In
22   light of the other evidence in the record regarding plaintiff's diagnosis of fibromyalgia, in
23   particular, Dr. O'Brien's examining opinion that also diagnosed plaintiff with fibromyalgia and
24   opined on the functional impact of that condition, the ALJ's consideration of the fact that Dr.
25   Siy's opined limitations closely tracked those alleged by plaintiff in was proper and supported by
26   substantial evidence.

27   ////
28   ////

In sum, the ALJ provided multiple specific and legitimate reasons for rejecting Dr. Siy's opinion that were supported by substantial evidence in the record. Accordingly, the ALJ did not err in making such a determination.

V. CONCLUSION

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.

3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: August 9, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE